Good morning, Your Honors. May it please the Court, Carolyn Wiggin from the Federal Defender's Office in Sacramento. Welcome back. I think we saw you yesterday. I did. I did. So it's good to be back here again. And today I'm here for Mr. Sandhu. And I will, again, try to reserve two minutes for rebuttal if I can. Your Honors, I wanted to start today by discussing the statutory interpretation issue. Now, if we look at the subsection at issue, it was passed, it became law back in 1968, along with a number of other subsections. They've all survived, at least the two flanking the subsection at issue. They've moved within the statute, but they've all three hung together that whole time. And when Congress passed the statute, it issued a report talking about different types of telecommunications abuse it was concerned with. It talked about abusive conversations over the phone, but it also talked about the practice of people ringing another person's telephone over and over and over again, only to hang up when the person answered and then starting the process again. So irritating someone by causing their phone to repeatedly ring. What do you do with Hughes v. Tobin? Your Honor, could you — I'm just going to get my brief here. I believe Tobin is — That was a First Circuit case that said, the intent required as to repeated ringing is merely knowledge that the use of repeated calls was contemplated, the repeated ringing being then foreseeable. That's at 480 F-30. It was cited in the briefs. Right. Tobin — Tobin, I think, is actually helpful. It talks about the distinction between subsection A1D and A1E. Tobin talks about there's a counterpart to when the phone is left to ring, and that's when the phone is answered and there's conversation. So the conversation would be covered by a subsection such as E, which could have been charged here, but wasn't. But the repeated ringing is covered by D. And — Well, regardless of the conversation, if there are many, many, many conversations, that means there are many, many, many rings. Yes. And I think a case such as this one, it was charged under D. There was a lot of ringing. There was many, many calls over the period in question. Hundreds. But the defense — yes. The defense asked for an instruction telling the jury, you have to — in this case, he's charged with ringing. There's a different law about people who harass through conversation. He wasn't charged with that here. So you can certainly consider a range of evidence, but, jury, you have to decide that he intended to harass through the ringing. That was a defense instruction Mr. Sandu timely requested from the judge, and the judge denied that request. So had that instruction been given — If we agreed with you, what do you want us to do? Well, I think the conviction should be reversed because he was deprived of defense theory instructions. I actually go further and say there was insufficient — And sent back for retrial under an appropriate instruction? Well, my full argument is that there was insufficient evidence. If the Court agrees with that, of course, it can't be retried. The other position would be that he was entitled to the defense theory instructions. If it's reversed and the government chooses to prosecute him again, that would certainly be what we'd be asking for. Your Honor, as I've just covered, I think that — I think your argument is pretty straightforward. Let's hear it from the other side. Okay. And then if you've got a response, we'll hear it. Thank you. Good morning, Your Honors. If it pleases the Court, James Connolly on behalf of the United States. May I just ask, wouldn't subsection E, which criminalizes harassing communication rather than a ringing, be a better fit for Sandu's conduct? While we agree with the Court that it would fit some of the conduct, the government here chose to charge subsection D. The state of the evidence as it sits physically made D a better fit because if we were to focus on subsection E, the calls that could be charged then would be the ones in which communication actually occurred. As it happens, there were 3,000 calls roughly in the charged time period, but this goes all the way back to 2009. I would point the Court to the sheer number of calls that were not answered, the sheer number of calls that were just repeated one after the other. Now, that doesn't really satisfy the problem, does it? I mean, if we were to take a narrow view of what D is doing by looking at the surrounding statute and saying, look, D is really about the ringing, and it's about intent to harass by constantly ringing a phone even if it's not going to be answered. And if we thought that he really did want to talk to somebody, and the only way he could get their attention was by ringing them, then you probably don't have a case under D, at least you haven't made it out in this proceeding. Well, Your Honor, we would disagree. The sheer volume of the calls that he engaged in and the pattern of the ringing one after another after he had been hung up. Speaking of the pattern, do you have any evidence that if the call is picked up, that he then didn't speak? Pardon me? Do you have any of the calls in which the phone rings, the government official at the other end picks it up, and he then hangs up without speaking? Your Honor, I don't believe that there's evidence in the record. Well, see, I think what he's doing is he's trying to talk to people. That's what the evidence shows. And then I can see why you're a little reluctant to use E because we're talking to a government official and he's got a complaint. I understand that it's a, I'll say it politely, a fringe sort of complaint, but you've got a First Amendment problem as soon as you start saying, wait a minute, he can't call to say this. So I understand why you didn't do E, but D doesn't fit very well. Well, Your Honor, again, the volume and frequency of the calls, the repeated ringing, we think that D does, in fact, fit the pattern here. But I would also refer the Court to two cases, one that Judge Nelson brought up earlier, which is the Tobin one, which is that even if he has another intent besides the intent to harass, he is still guilty. As long as he has the intent to harass and the language, the vile, the venom that he used to do it. But he has to intend to harass by ringing, and that's the instruction that was not given. Well, because that is not how, Your Honor, how the statute reads. The intent to harass can be shown by a litany of circumstantial evidence. However, the Court did present the intent to harass. The specific intent. I thought it had to be by making or causing the telephone of another repeatedly or continuously to ring. Which he did do. I would point the Court to Exhibit 2C of the government's trial exhibits, in which you see the calling pattern where it rings and rings and rings and rings. If you know that the person on the other end of that line, if you answer it, is going to abuse you, then the ringing of that call is menacing. If it happens over and over again, that is harassing. You know, this was the exact harm that the statute was designed to deter. But you could have put the you could have allowed, even if you didn't like the defendant's proposed jury instruction, the government could have proposed a modification. But you've taken this under a different theory from what the defense proposed to the district court, which seems to be a closer fit to the actual language of the statute, particularly considering the other provisions. Again, Your Honor, I don't agree, and it's because, respectfully, because what the defense was proposing was an instruction that would have implied to the jury that if he had the intent to harass in any other way other than the ringing, then he simply was not guilty. And we're saying he was guilty under D, and he may have also been tried under, but we made the prosecutorial decision not to. But the fact is, is that their instructions unnecessarily bent the jury towards would have bent the jury unnecessarily towards the idea that if he had some other means of harassing besides the ringing, he that would that would immunize him from guilt under D, and that is simply not not legally accurate. Can you point to any cases where the Court has applied subsection D to conduct outside of hang-up calls? Yeah. Well, the toe — yes, Your Honor. The Tobin cases do, in fact, do that. They looked to the communications of the parties between each other to determine what their intent was. In addition, in the Ossinger case, which — in which this was speech-integral-to-conduct that was in the venomous texts and e-mails that the defendants sent, that was no longer protected by First Amendment speech because it was speech-integral-to-conduct. What we have here is a six-year pattern of harassment. And as you'll know from the briefs, the government holds that, you know, the — whatever political thought was laced in amongst the abuse and in amongst the invective was merely specious. It was a pretext. But that's all beside the point, because the conduct was the constant ringing of the phone. Again, 3,000 phone calls to the SEC in calendar year 2015, 325, I believe, phone calls to Joseph Ozag at FINRA in the time period charged there. But that's just in the charged time period. I'm very sympathetic with the government on this one, not necessarily to the theory under which you've made — you've prosecuted this case, but I'm very sympathetic to the government. To receive all these phone calls over a short period of time is just very, very difficult. Isn't there another way? I mean, isn't it technologically possible for the government to block phone calls coming from the numbers from which he is calling? I mean, why is the government so defenseless here that its only choice is to bring a criminal prosecution? Well, there are a couple of reasons for that, Your Honor. We did ask the witnesses on the SEC. The SEC cannot and will not block phone calls, because it is there for a public service. And I appreciate that Your Honor acknowledges the efforts of these employees, because they were heroic in dealing with this individual who would not be — would not listen to reason and would not calm down in over six years and never stop. And you say the government cannot block phone calls? In this circumstance, it would to block a number from this individual. Your Honor, he changed his phone number. He disguised his phone number, and he blocked his phone number. He found ways around those systems. The SEC — Oh, so you did try to block them. They tried to at least identify them so people could see them on their caller ID and know whether or not they should answer. But he came up as a blocked call. Now, with the SEC, which deals with law enforcement agencies, most law enforcement agencies' numbers are blocked. So this interfered with the SEC's ability to do its job. Bruce McClain testified about that very clearly. And in addition to that — pardon me. So they — they couldn't address blocking simply the number. But in addition to that, they actually had to set up an entirely new IT system, the threatening, harassing, abusive, and intimidating caller system. They had to design that for Mr. Sandhu, because his volume of calls was so enormous that it was tying up their system. And he would leave lengthy voicemails. And so they sort of did everything they could without violating their duty to be a public service body. And they fielded his calls, and they tried to talk him down, and they tried to help him. Bruce McClain tried to help him. The defense plays on that a bit in their briefs. But the reality is, once Bruce McClain decided that, in fact, he — first of all, he couldn't really determine what the claim was. But then when he said, I'm sorry, but we can't help you, then the venom started on Bruce McClain, and he accused him of sex acts with the SEC chair in graphic detail and told him he was wanted for public hanging and that he should be shot. But all of that merely shows the intent. It was his conduct of ringing the phone, constantly calling. The statute says, with the intent to harass. But it does not include — it does not say solely by the ringing. And as Your Honors know, solely is a word included in the next statute down in E. So Congress could have included it. But it's the act of ringing the phone repeatedly and continuously, which the phone records alone establish, and established for the jury. But the intent to harass can be shown from just those phone records alone. But in addition, the government, to make the case clear, showed what he said, how he spoke, the fact that he abused people who could not help him. I note that the defense doesn't, in its briefs, address the fact that he harassed Robert Kusami, who was the former head of enforcement at the SEC and had gone into private practice. And he says — he leaves him voicemails of the same — exactly the same stripe. But it is the — it is the constant ringing, the constant phone calls that are established simply by the phone records, and the fact that after people hung up, he would call back. And this was precisely the harm that Congress was seeking to address. Roberts. Okay. Thank you very much. Thank you. Roberts. Response? Thank you, Your Honors. Just briefly, I will bring up that he — Mr. Sandhu was charged under D. Had the — had the requested instruction. That would have been one way to actually prosecute him properly for this offense. And what precisely was the requested instruction? What precisely was the — What precisely was the requested instruction? Yeah. I — if I — you'd like me to quote it directly, let me get it. I would. Yeah. That would be useful. It was — this is page 15 of my brief, of the opening brief. The defendant is charged with making or causing a telephone to ring with intent to harass a person at the called numbers. To find the defendant guilty of these charges, you must find beyond a reasonable doubt that he intended to harass a person by causing his or her telephone to ring repeatedly. A different law governs calling — calls during which conversation or communication ensues. Defendant is not charged with violating that law. If you have a reasonable doubt that the defendant intended to harass a person specifically by ringing the telephone, then you must find him not guilty. Got it. Okay. And I would just say I believe that's the correct reading of the statute. And how is that different from the instruction that was given? The instruction that was given says you have to find intent to harass, but it doesn't inform the jury it has to be harassment through ringing. And, of course, the government — Well, yes. Yeah, it does. I'm looking — I'm looking at the instruction right now. First, the defendant made or caused the telephones of the United States Securities and Exchange Commission to ring — to repeatedly ring. Secondly, the defendant did so with the intent to harass any person at the called number. So what's wrong with that? Well, Your Honor, I think it leaves open the possibility, and the government certainly argued this, that the harassment through conversation was the harassment at issue. Now, I don't agree with that reading of the statute. Yeah, but there's no discussion of conversation there. It's talking only about repeatedly ringing. Well, the actus they talk about is repeatedly ringing, and then the — for the purpose of harassment isn't tied back to the ringing. So I think it leaves the possibility of — Well, the defendant did so, meaning made or caused the telephones of the United States Securities and Exchange Commission to repeatedly ring, did so with the intent to harass any person at the called number. Well, I think that the way the case was presented and argued, the defense's view was that the government relied heavily on the conversation. Yeah, but we're really focused on the nitty-gritty of the instruction. So what's wrong with that instruction? I think it doesn't tell the jury. When the defendant has a defense theory that he wants to be sure he's only being convicted because of the ringing, he's entitled to his defense theory instruction reminding the jury it's about the ringing. I mean, I don't — there isn't anything in there about conversation. Well, I think if you look at the way the case was prosecuted and you look at the government's argument, that was the heart of their case. And I would just say that if conversation can be enough, then he should have gotten his First Amendment instruction. Under Freeman, this speech, it was obnoxious, but it was about public policy. And I believe that Freeman makes clear that when you have this type of speech, you're entitled to a jury instruction so the jury can decide if it's protected First Amendment speech. If that's all, I'm — Okay. Thank you. Thank you. Thank you very much. Thank both sides for your arguments. The United States v. Sandhu, submitted for decision.
judges: D.W. Nelson, W. Fletcher, Bybee